UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE:

CP SHIPS LTD.,                                              Case No.: 8:05-MD-1656-T-27TBM
SECURITIES LITIGATION

_____/

## ORDER

**THIS CAUSE** comes before the Court on Lead Plaintiffs' renewed Motion for Final

Approval of Settlement and Plan of Allocation of Net Settlement Fund and Lead Plaintiffs'

Corrected Motion for an Award of Attorneys' Fees and Reimbursement of Expenses.[1]

### *Procedural History*

On April 5, 2007, this Court granted Defendants' Motion to Dismiss the Consolidated

Amended Class Action Complaint. (Dkt. 85). On June 21, 2007, Lead Plaintiffs appealed that Order

to the Eleventh Circuit. (Dkt. 89). While the appeal was pending, the parties reached a settlement

and the Eleventh Circuit thereafter issued a limited remand for the purpose of approving the parties'

settlement agreement. (Dkt. 99). On March 10, 2008, this Court granted Lead Plaintiffs' Motion

to Preliminarily Approve Settlement. (Dkt. 107).

On June 11, 2008, this Court held the first final approval hearing, during which proposed

Objector and Intervenor Earl Downey was heard. (Dkt. 133). On June 19, 2008, the Court denied

Downey's objection for lack of standing and denied Downey's motion to intervene as untimely and

---

[1] Prior to the first final approval hearing, Lead Plaintiffs filed a Motion for Final Approval of Settlement and Plan of Allocation of Net Settlement Fund (Dkt. 123) and a Corrected Motion for an Award of Attorneys' Fees and Reimbursement of Expenses (Dkt. 126). Because the Court ordered the issuance of a Supplemental Notice, these motions were denied without prejudice. (Dkt. 134). Although the motions are not currently pending, Lead Plaintiffs properly renew the requests and arguments therein.

1

for lack of standing. (Dkt. 134). Nonetheless, the parties consented to issuance of a Supplemental Notice, which specifically notified class members of the parallel Canadian actions, modified the expected per share recovery, and was made available in French. (Dkt. 132). On June 30, 2008, this Court directed issuance of the Supplemental Notice. (Dkt. 136).

Following the issuance of the Supplemental Notice, two additional requests for exclusion were filed, bringing the total number of class members requesting exclusion to seven. (Dkt. 145-2, LaCount Aff., Exh. B). In addition, one Objection was filed by Allen Germain, a member of the settlement class (Dkt. 140), to which both Lead Plaintiffs and Defendants have responded (Dkts. 143, 145). As set forth at the hearing, Germain's Objection is overruled, the final settlement is approved in all respects, and the motion for attorneys' fees and costs is granted.

### *Discussion*

### *1.    Germain Objection*

In the Objection, Germain argues that: (1) the settlement is not fair because it may affect certain class members' ability to pursue recovery in parallel litigation in Canada ("Canadian actions"); (2) the class Notice and Supplemental Notice did not adequately advise class members of their rights to pursue recovery in the Canadian actions; and (3) the Court lacks subject matter jurisdiction with respect to foreign purchasers of CP Ships stock or, alternatively, the Court should decline subject matter jurisdiction pursuant to international comity considerations.

Assuming that Germain has standing to object to subject matter jurisdiction on behalf of all potential class members in the Canadian actions, the Court finds that there is a proper basis to exercise subject matter jurisdiction over foreign purchasers of CP Ships stock. It is well-established that a court may exercise subject matter jurisdiction over claims involving transnational securities

frauds, such as the one alleged here, if: (1) the alleged wrongful conduct occurred in the United States; or (2) the alleged wrongful conduct had a substantial effect in the United States or upon United States citizens. *S.E.C. v. Berger*, 322 F.3d 187, 192 (2d Cir. 2003). In assessing the first prong, or "conduct test," Plaintiffs must demonstrate that "substantial acts in furtherance of the fraud were committed within the United States." *Id.* at 193. This requires that: (1) the Defendants' activities in the United States be "more than merely prepatory to a securities fraud conduct elsewhere"; and (2) "the activities or culpable failures to act within the United States directly caused the claimed losses." *Id.* (internal quotations omitted). Because the Court finds that the conduct test is met, the second prong, or "effects test," is not reached. *Id.* at 195 (noting that if first prong is met, second prong need not be assessed).

As set forth at the hearing, the Consolidated Amended Class Action Complaint ("Amended Complaint") adequately alleges that substantial acts in furtherance of the alleged fraud occurred in the United States. Specifically, Lead Plaintiffs allege that Defendant CP Ships maintained its principal place of business in Tampa, Florida, including the following departments and personnel central to the alleged fraud: accounting, cost accounting, marine operations, accounts payable, accounts receivable, information technology, and critically, Defendant Frank Halliwell, CP Ships' Chief Executive Officer. (Dkt. 31, ¶¶ 17, 38). Lead Plaintiffs allege that "everyone answered to Halliwell," that Halliwell closely monitored cost reports, that he checked and challenged figures, and that Defendants permitted costs to be under-accrued. (Dkt. 31, ¶¶ 41, 47, 54-56, 63). In addition, Defendant Ian Webber, the Chief Financial Officer, also visited Tampa and was briefed by the manager of cost accounting. (Dkt. 31, ¶ 57). The implementation of the SAP accounting system conversion, which Lead Plaintiffs allege was used by Defendants to excuse their cost under-accruals,

3

also occurred in Tampa. (Dkt. 31, ¶¶ 4, 39, 68).

Thus, if Plaintiffs' allegations are to be credited that there was a fraudulent scheme, there is more than adequate evidence that the acts underlying the scheme occurred in Tampa. *See Berger*, 322 F. 3d at 194 (finding that creation of false financial information, transmission of the information overseas, and approval of statements after they were sent from overseas were sufficient). As such, it is immaterial that the alleged fraudulent financial statements were sent from CP Ships' official headquarters in England, as the alleged fraudulent practices underlying the inflated statements were concocted in the United States. *Id.* at 195.

The Court also rejects Germain's contention that the settlement is unfair to potential class members in the Canadian actions on the theory that it will bar their pursuit of claims in the Canadian actions. The impact on the Canadian class members was fully addressed and considered at the first final approval hearing. Based on the concerns raised by Downey and in accordance with the agreement of the parties, the Court ordered the issuance of the Supplemental Notice. (Dkt. 136). The Supplemental Notice was exceedingly clear and specifically advised class members that if they did not opt-out of this action they "could be precluded from participating in any of the Canadian Actions." (Dkt. 136-2 at 1). The Notice further provided the addresses, phone numbers, and email addresses for the attorneys handling the Canadian actions. This notice was more than "reasonably calculated to reach interested parties" and contained information "that a reasonable person would consider to be material in making an informed intelligent decision of whether to opt out or remain a member of the class." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 318 (1950); *In Re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104-05 (5th Cir. 1977). Because the Canadian class members have been given ample notice of their opportunity to opt-out of the action

and to pursue their claims in Canada, the Court finds that the settlement is fair and adequate as to the class members. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 222-23 (5th Cir. 1981) (finding settlement was fair where "Plaintiffs had an opportunity to opt out of the class and litigate their state claims in state court; more pertinent, they knew that settlements compromising class members' state claims had been negotiated before they were asked to opt out").

Finally, the Court declines to abstain from exercising jurisdiction on international comity grounds. "[F]ederal courts have an obligation to exercise the jurisdiction conferred upon them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). International abstention is only appropriate in certain limited circumstances, as determined by weighing the competing concerns of: (1) international comity; (2) fairness to litigants; and (3) efficient use of scarce judicial resources. *Belize Telecomm., Ltd. v. Gov't of Belize*, 528 F.3d 1298, 1305 (11th Cir. 2008). Germain asserts that abstention is appropriate due to the possibility that class members in the Canadian action may achieve greater success on those claims than they will in this action.

This case does not present the type of circumstances in which declining jurisdiction on international comity grounds is appropriate. First, Germain's underlying premise for abstaining in favor of the Canadian actions -- that the Canadian actions may produce a better recovery -- is entirely speculative; the Canadian actions may also be unsuccessful. Second, as discussed above, the alleged fraud in this case has a substantial connection to the United States, rather than Canada. *Cf. Paraschos v. YBM Magnex Int'l, Inc.*, 130 F. Supp. 2d 642, 646 (E.D. Pa. 2000) (in dismissing action based on comity, noting that vast majority of defendant's shareholders were foreign and shares were not registered on U.S. stock exchanges). Third, the Canadian courts have not rendered a competing judgment on the merits. *See Turner Entm't Co. v. Degeto Film GmbH*, 25 F.3d 1512,

1518 (11th Cir.1994) (noting that "[w]hile courts regularly permit parallel proceedings in an American court and a foreign court, once a judgment on the merits is reached in one of the cases . . . failure to defer to the judgment would have serious implications for the concerns of international comity"). Finally, declining jurisdiction at this juncture, after a fully negotiated settlement between the parties, would not be fair to the existing class members, nor would it promote judicial efficiency. For these reasons, the Court declines to abstain from exercising subject matter jurisdiction.

Based on the foregoing, Germain's Objection is overruled.

## 2.    *Settlement Approval*

Pursuant to the relevant factors in *Bennett v. Behring Corporation*, 737 F.2d 982, 986 (11th Cir. 1984), the final settlement and plan of allocation is approved. As an initial matter, the settlement was not the result of fraud or collusion and was reached after arms' length negotiations between the parties. In addition, the settlement amount of $1,300,000.00 and the plan of allocation is fair, adequate, and reasonable, considering the relevant factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Id.*

In the instant case, the settlement was reached after the Court issued a comprehensive Order dismissing the Amended Complaint for failure to allege scienter and after the parties briefed the issues on appeal to the Eleventh Circuit. As a result, the parties were in a position to properly evaluate the relative strengths and weaknesses of the case. In addition, Lead Plaintiffs considered the impact of an intervening United States Supreme Court decision, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2513 (2007), which further clarified securities plaintiffs' heavy

burden in alleging scienter. (Dkt. 124, Yarnoff/Sommers Dec., ¶ 26).

Although the cash settlement amount of $1.3 million is not great, only one percent of CP Ships' costs were ever under-accrued, which, in addition to the routine difficulties encountered by securities plaintiffs in demonstrating loss causation, could significantly impact Plaintiffs' ability to prove damages at trial. Moreover, as set forth in the Order on the motion to dismiss, Plaintiffs failed to properly allege scienter, which would impact their ability to demonstrate liability. Thus, while the settlement amount appears small in relation to Lead Plaintiffs' estimated damages of $130 million to $180 million, it is not insignificant given the nature and circumstances of this case.

Finally, apart from Germain, no class member has objected to the settlement amount or plan of allocation, and only seven class members submitted requests for exclusion. Based on the foregoing, the Court finds that the settlement is fair, adequate, and reasonable.

### 3.    Attorneys' Fees and Costs

Lead Plaintiffs request attorneys' fees in the amount of 22.5% of the settlement fund. Upon consideration of the factors outlined by the Eleventh Circuit in *Camden I Condominium Association v. Dunkle*, 946 F.2d 768 (11th Cir. 1991)[2], this Court finds that the requested award of 22.5% of the settlement fund, which is under the 25% "benchmark" amount, is appropriate under the circumstances. Counsel, who are skilled and experienced litigators, expended significant time in this litigation -- over 2930 hours -- while undertaking the case on a contingent basis. Although the

---

[2] The factors include: "(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; (12) awards in similar cases." *Camden I Condominium Ass'n, Inc.*, 946 F.2d at 772.

settlement obtained is not extraordinary, it is appropriate given the nature of this case. In addition, Lead Plaintiffs do not seek fees and expenses incurred in issuing the Supplemental Notice or preparing for the second final approval hearing. (Dkt. 145 at 3). Finally, no class member has objected to the requested amount of fees or costs.

For these reasons, the Court approves the requested attorneys fees in an amount of 22.5% of the settlement fund, plus interest. The Court also finds that the request for reimbursement of $109,821.69 in costs plus interest, is reasonable, based on the itemized expenses. (Dkt. 124-3 at 6-8, 29-31).

### Conclusion

Upon consideration, it is **ORDERED AND ADJUDGED**:

1) Lead Plaintiffs' Renewed Motion for Final Approval of Settlement and Plan of Allocation of Net Settlement Fund is **GRANTED**.

2) Lead Plaintiffs' Corrected Motion for an Award of Attorneys' Fees and Reimbursement of Expenses is **GRANTED**.

3) A Final Order and Judgment is issued contemporaneously herewith.

**DONE AND ORDERED** in chambers this __21^st__ day of October, 2008.

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of Record
Eleventh Circuit Court of Appeals

8